Commonwealth *v.* Lee, Appellant.

Submitted November 8, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*James A. Pruyne, W. Marshall Dawsey,* and *Duvall & Dawsey,* for appellant.

*C. Wayne Smyth,* Assistant District Attorney, and *Maurice L. Epstein,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 19, 1973:

Appellant, Goldie Lee, Jr., was arrested on November 1, 1970, and charged with the murder of Hazel Guisewhite. At arraignment, on December 28, 1970, appellant entered a plea of not guilty to the charge. Thereafter, appellant filed pretrial motions challenging the petit jury array and requesting a change of venue.

Both motions were denied on January 12, 1971; on that same date, appellant withdrew his plea of not guilty, and entered a plea of guilty, which was accepted by the court.[1]

On January 13, 1971, after an evidentiary hearing conducted pursuant to Rule 319A of the Pennsylvania Rules of Criminal Procedure, the court ruled that the defendant's guilt could rise no higher than murder in the second degree. Upon further hearing, the court found appellant guilty of second degree murder. Post-trial motions were denied.

This direct appeal followed. Appellant at all times has been represented by counsel.

Appellant raises two issues: (1) that the trial court's finding of murder in the second degree was not supported by the evidence and, (2) that the trial court abused its discretion by sentencing the defendant to eight and one half to twenty years on the charge of murder in the second degree. We decide both issues adversely to the defendant.

In reviewing the sufficiency of the evidence to support a conviction, we must carefully scrutinize the entire record, viewing the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Young,* 446 Pa. 122, 123, 285 A. 2d 499, 500 (1971); *Johnson Appeal,* 445 Pa. 270, 273, 284 A. 2d 780, 781 (1971). The crucial inquiry is to determine whether, on the whole record, a finder of fact could reasonably have found all elements of second degree murder.

The Commonwealth's evidence was as follows: On October 31, 1970, at approximately 7:00 P.M., appellant arrived at the Eastside Tavern in Bradford County. Upon entering, appellant took a seat at the bar, where-

---

[1] Appellant on this appeal does not challenge the lawfulness of this plea.

upon he began to converse with one Reynolds, who was seated to appellant's immediate left. Moments later, Hazel Guisewhite, the victim, a previous paramour of appellant entered, and after a few moments, took the seat at the bar next to appellant, which Reynolds had now abandoned. The two began, what appeared to the Commonwealth's eyewitnesses to be, a normal conversation. No loud words were spoken, no anger detected and no fight ensued. The appellant in fact testified he bought the victim a drink. Moments later, appellant and the victim arose from their seats, now standing but two to four feet apart. Appellant then pulled a revolver from his pocket, backed up a few feet and fired, thereby mortally wounding Hazel Guisewhite. Appellant, still brandishing the gun, backed towards the door and fled.

To rebut this evidence, appellant took the stand. His testimony, in direct contradiction to that of three eyewitnesses, was that during the conversation with the deceased, she had threatened that before appellant left the tavern that evening, she and her new boyfriend, Reynolds, would attack and beat appellant. Now in fear, and with Reynolds allegedly advancing towards him, appellant arose from his seat and began backing towards the door. As a deterrent, appellant further testified that he drew a gun, which he regularly carried. By accident or instinct, the gun discharged. Still in fear, appellant fled.

Although appellant's testimony at the degree of guilt hearing was clearly offered for the purpose of establishing voluntary manslaughter,[2] it was obviously

---

[2] "First, in the situation where a defendant acts under an unreasonable fear that he is in danger of serious bodily harm, there may be a specific intent to kill, and yet the offense may constitute voluntary manslaughter. Commonwealth v. Jordan, 407 Pa. 575, 585, 181 A. 2d 310, 316 (1962) ; Commonwealth v. Thompson, 389

found by the trial court to be incredible. Instead, the court chose to believe the testimony of the Commonwealth's eyewitnesses.

In reviewing the entire record, and considering the evidence in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to support the trial court's finding of second degree murder.

Appellant's second and final argument is that the trial court abused its discretion by imposing an eight and one-half to twenty year sentence.[3] We cannot agree. As this Court stated in *Commonwealth v. Wrona,* 442 Pa. 201, 206, 275 A. 2d 78, 80-81 (1971): "Whether a trial judge imposed a proper sentence on a criminal defendant does not present a pure question of law [thereby making it reviewable], unless the sentence exceeds the statutorily prescribed limits or is such as to be constitutionally impermissible. In the usual case, the problem presents a mixture of law and fact. . . . [T]he sentence imposed on a person convicted of crime lies with one exception (where the conviction is for first degree murder following a jury trial) within the sole discretion of the trial court, and the sentence imposed will not be reviewed by an appellate court, unless it exceeds the statutorily prescribed limits or is so manifestly excessive as to constitute too severe a punishment." (Citation omitted.) See *Commonwealth v. Marks,* 442 Pa. 208, 210, 275 A. 2d 81, 82 (1971).[4]

Pa. 382, 394, 133 A. 2d 207, 214 (1957)." *Commonwealth v. Simon,* 432 Pa. 386, 388, 248 A. 2d 289, 290 (1968).

[3] Appellant does not claim that he was not given an adequate opportunity to present to the court evidence in mitigation of sentence. The record discloses that after sentence was imposed, appellant filed a post-trial motion for reconsideration; this motion was denied.

[4] See also *Commonwealth v. Person,* 450 Pa. 1, 297 A. 2d 460 (1972). We are unaware of any cases where this Court has reduced

The penalty for murder in the second degree for the first offense is a term of imprisonment not exceeding twenty years and/or a fine of not more than $10,000. Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701. Appellant's sentence does not exceed this prescribed statutory limit nor is it so manifestly excessive "as to be constitutionally impermissible."[5]

Accordingly, the judgment of sentence is affirmed.

---

an appellant's sentence, except in those (pre-*Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726 (1972)) capital cases where the death penalty was imposed. See, e.g., *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A. 2d 526 (1971) ; *Commonwealth v. Aljoe*, 420 Pa. 198, 216 A. 2d 50 (1966) ; *Commonwealth v. Green*, 396 Pa. 137, 151 A. 2d 241 (1959) ; *Commonwealth v. Irelan*, 341 Pa. 43, 17 A. 2d 897 (1941) ; *Commonwealth v. Garramone*, 307 Pa. 507, 161 Atl. 733 (1932).

[5] See also American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences (Approved Draft, 1968). Generally, the Standards propose that: (1) sentence review be available in all cases where the conviction itself would be reviewable (Standards, §1.1(a)) ; (2) existing appellate courts be empowered to review the sentence as well as the other issues in the case (Standards, §2.1) ; (3) a transcript of the initial sentencing hearing, as well as the presentence report, be made a part of the record before the appellate court (Standards, §2.3(a)) ; and (4) the reviewing court be allowed to make any disposition that was originally available to the trial court (Standards, §3.3). See also American Bar Association Project on Minimum Standards For Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures. As the Standards Relating to Appellate Review of Sentences indicate (Standards, Appendix A), at least thirteen states now, by statute, provide for some form of appellate review of sentence. The extent of the statutory review allowable, as well as the possible alternatives available to the appellate courts, vary from state to state according to the particular statutory scheme enacted.