429 A.2d 13

**COMMONWEALTH of Pennsylvania**

v.

**William Ladd BATTERSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1979.

Filed April 24, 1981.

Daniel R. Milliard, Coudersport, for appellant.

Thur W. Young, District Attorney, Coudersport, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and ROBERTS, JJ.*

WICKERSHAM, Judge:

William Ladd Batterson, appellant was charged with operating a motor vehicle under the influence of alcohol arising out of an incident occurring on August 2, 1978 in Coudersport Borough, Potter County, Pennsylvania.[1]

---

* Justice SAMUEL J. ROBERTS of the Supreme Court of Pennsylvania is sitting by designation.

1. Under the Vehicle Code, 75 Pa.C.S. § 3731, the offense is a misdemeanor of the third degree, carrying a sentence to imprisonment of not more than one year and a fine of not exceeding $2,500.00.

On January 15, 1979 a jury returned a guilty verdict and on April 3, 1979, Honorable Harold B. Fink, President Judge, sentenced the defendant-appellant to imprisonment in the Potter County jail for a period of not less than fifteen days nor more than thirty days and a fine.[2]  An appeal was taken

2.  The sentencing colloquy was as follows:

*THE COURT*: Very well.  Mr. Batterson, you have heard or noted, hopefully, that the District Attorney and your counsel have both preferred to remain silent as to any matters to be brought to the attention of the Court prior to imposition of sentence.  I would like to give you this opportunity to make any statement to the Court which you felt relevant, any facts which you feel the Court should know about prior to the imposition of sentence.

*Mr. Batterson*: I have none.

*THE COURT*: Very well, I ask the defendant to rise and come forth please.  William Ladd Batterson, the Court is now about to impose sentence upon you pursuant to a jury verdict of guilty on the charge of driving while under the influence of intoxicating beverages or drugs.  This Court has had the pleasure of knowing you personally for a very substantial period of time.  Accordingly, no pre-sentence report was prepared nor did the Court find it necessary.  The considerations which the Court bases its imposition of sentence on are as follows: (1) Your approximate age which is, approximately, 31 years; (2) Your prior record, the Court is not aware of any previous criminal record suffered by you; (3) Your general disposition which the Court finds as generally law-abiding and the Court further finds you a helpful and useful citizen to the community.  The Court further acknowledges that as far as inherent criminality is concerned, the Court is pleased to observe that this is absent in your personality.  The Court further considers the incident itself, namely, that you were found guilty by a jury of driving and operating a motor vehicle while on the highways of the Commonwealth at a time during which you were under the influence of intoxicating beverages.  It is the belief of this Court that the jury found as a result of this that you went off the road and did considerable damage to two joining properties.  The Court considers the seriousness in the mind of the Court as to this particular offense.  But for the grace of God you could have been seriously injured, or worse, as could a bystander on or about the highway at the time and place of the accident.  The Court considers the nature of your employment, namely, that you are, I would consider, a successful realtor in the community and you have generally been a benefit to the community.  The Court considers the deterrent value of any sentence to be imposed to deter you as a person and others from committing a like offense of operating a motor vehicle on the highway while under the influence of intoxicating liquor.  Accordingly, the following sentence: WILLIAM LADD BATTERSON, you are sentenced to imprisonment in the Potter County Jail for a period of not less than fifteen days nor more than thirty days.  Furthermore, you are Ordered to pay a fine in the amount of

to our court and we will consider the first[3] statement of questions involved as follows:

Is a judge in error when he refuses to disqualify himself after having presentenced all individuals who are found guilty of the crime of Driving While Intoxicated to a jail sentence and a fine?

Appellant's concern deals with an article[4] appearing in *The Potter Enterprise* Wednesday, August 30, 1978, entitled

$1,800.00 unless at your option you wish to pay a fine in the lesser sum of $1,500.00 plus donate a painting to be permanently hung in the Senior Citizens Center here in Coudersport with a notation that it was donated by William Ladd Batterson; you will have this option. Furthermore, you are placed on probation for a period of one year less the number of days you are incarcerated. The terms of probation shall be as follows: (1) You shall pay the fine in the alternative as you choose together with the costs of prosecution together with any restitution to any of the victims not heretofore paid in the amounts and at the times as specified by the Probation Officer of Potter County. (2) Further you shall abide by all of the laws of the United States, the Commonwealth of Pennsylvania, or any other State or local municipalities, boroughs and townships and their ordinances. (3) You shall follow any mandates of the Probation Officer as may be from time to time set forth in writing to you. I ask the District Attorney if there are any further matters which he wishes to place on the Record?
Sentencing Transcript at 1, 2, 3.

3. The remaining two issues raised on appeal are without merit; they have been fully considered but will not be further discussed.

4. The article, in its entirety, reads:

**COUDERSPORT, PA. 16915—**
WEDNESDAY, AUGUST 30, 1978
*Law Officials Plan Coordinated Effort—*
**Drunk Driver Crackdown**

**By Paul Heimel**

"Drunken driving is no laughing matter."

That's the motto of a countywide campaign which is being launched by area law enforcement officials at the state, county and local levels.

State and local police are planning a "crackdown" on drunken driving in Potter County and they are receiving cooperation from county officials.

"Let it be known," President Judge Harold B. Fink told the Enterprise, "that I intend to order an automatic jail term for any accident in which it is proven that a driver was under the influence—and I don't care who he is."

District Attorney Thur W. Young said his office "intends to vigorously prosecute any case in which a drunken driver might be involved.

"Drunk Driver Crackdown" in which President Judge Fink was quoted as saying that:

"Let it be known," President Judge Harold B. Fink told the Enterprise, "that I intend to order an automatic jail

"We're all concerned about the number of drinking-related accidents around Potter County," said the D.A., "particularly within the past year or so."

### Danger, Penalties High

The inherent danger—if not the heavy penalties—should be enough to keep the drunk driver off the highways.

Under recent changes in the law, conviction on drunken driving charges will result in an automatic six-month suspension of driving privileges, as well as penalties which could be as harsh as one year imprisonment and a $2,500 fine.

Second offenders face an automatic one-year revocation of driving privileges.

Nationwide statistics show that a high percentage of traffic fatalities involved one or more drunken drivers. Even a moderate amount of alcohol in the system has been shown to slow one's reaction time.

The statistics have real meaning in Potter County, according to Sgt. Lamar Green of the Coudersport-based Pennsylvania State Police.

"In investigation of the last few traffic fatalities in Potter County," Green told the Enterprise, "we have found that nearly all of the accidents involved at least one driver who had drunk intoxicants prior to the accident."

He said state police from the Coudersport substation are being advised to "make an additional effort to locate and arrest drunken drivers."

### Extended Police Effort

"We're not going to be parking outside of the barrooms, or anything like that," said Sgt. Green, "but we will be making an extended effort to arrest operators if it can be proven they are under the influence."

Local law enforcement officials are also expected to be involved in the campaign. Dan Weidner, president of the Potter County Law Enforcement Agency, said his organization would be "very interested" in cooperating.

Any suspected cases of driving under the influence of intoxicants will be referred to the state police, who can test the suspect by one of two different means.

Most frequently used test is the "breathalyzer," which measures the amount of alcohol in the suspect's blood. The test must be administered by certified operators.

### Test At Barracks

In Potter County, breathalyzer tests are administered at the state police barracks, where a number of officers have been certified after completing the mandatory 40-hour course.

term for any accident in which it is proven that a driver was under the influence—and I don't care who he is."

Appellant argues in his brief that the trial judge, in effect, presentenced him "without any presentence investigation or consideration of mitigating circumstances." He points to *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976) as support for his position.

In *Martin*, appellants contended that their sentences were imposed in accordance with a policy agreed to in advance by the three judges of the Lancaster County Court "without reference to either appellant's" individual characteristics or to the circumstances of the particular offenses. Specifically each of the six appellants, guilty of selling heroin, had been sentenced to three to ten years imprisonment plus a fine, the

The fully-automated breathalyzer measures the amount of alcohol in the bloodstream by analyzing the suspect's breath through a chemical solution.

A digital print-out reveals the blood-alcohol content.

Actual blood samples may also be taken and analyzed to determine the amount of alcohol in the suspect's system.

If the alcohol content measures between .05 and .10, police may consider the reading as "evidence" that the suspect may be under the influence.

Any suspect with a reading above .10 is presumed drunk.

Sgt. Green said that determining "legal intoxication" is a longer process than most people imagine. "We don't necessarily administer tests just because we detect an odor of alcohol on the driver's breath," said the sergeant.

"Officers in the field look for certain signs, such as erratic driving, lack of coherence, slurred speech, inability to walk straight and other signs in a standard sobriety test," Green noted.

Anyone stopped for suspected driving under the influence has the right to refuse the breathalyzer or blood sample test.

State law states, however, that such refusal will result in an automatic six-month suspension of driving privileges.

Various groups have been trying for years to keep drunken drivers off the road, but have achieved only limited success.

Several popular phrases have emerged: "Friends don't let friends drive drunk." "If you drink, don't drive." "Slow on the Bottle, Enjoy the Road—SOBER."

In Potter County, law enforcement officials are hopeful that "a word to the wise" might be sufficient.

If not, they are prepared to use stronger means in an attempt to rid the highways of this dangerous element of society.

Drunken driving truly is no laughing matter.

sentence to be consecutive where more than one sale was involved. As Justice Roberts pointed out:

> In no case was a pre-sentence report ordered. No meaningful inquiry was made into the appellants' backgrounds, individual characteristics, relative culpability or prospects for rehabilitation, despite clear evidence that the appellants' offenses were committed in varying circumstances. In short, all appellants' sentences were based on an abstract predetermination of the sentence to be imposed for the particular offense, without regard to the individual circumstances of particular cases.

*Commonwealth v. Martin, supra,* 466 Pa. at 126–128, 351 A.2d at 654–655. Justice Roberts continued his discussion by stating:

> The sentence must be imposed for the minimum amount of confinement that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. See 18 Pa.C.S. § 1321(b) (Supp.1975). At least two factors are crucial to such determination—the particular circumstances of the offense and the character of the defendant.

*Id.,* 466 Pa. at 133, 351 A.2d 658 (footnote omitted).

Instantly, the case *sub judice* is not controlled by *Martin.* Further, from the sentencing record we see that the court considered all of the factors deemed important by the supreme court in *Martin;* i. e., the nature of the incident, the defendant's background and all other pertinent circumstances. The sentence was modest, just and fair.

Judgment of sentence affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

While I agree with the majority that the trial court acted within the procedures and guidelines set out in *Common-*

*wealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976), and Pa.R.Cr.P. 1403(A)(2)(a) and (c), I do not believe that we should in any way endorse the actions of trial judges who make public declarations that they will automatically sentence persons guilty of a similar offense in a certain, consistent fashion. Clearly, a judge can reach the same end without expressing his views, and we have no way of reviewing such a decision. To publicly declare a policy such as that found in the instant case forces the judge to be or at the very least creates an appearance that the judge will be inflexible in sentencing and that he will not sentence in an individualized manner.

I have no quarrel with the majority's position—the trial judge stated why he ordered no presentence report, Pa.R. Cr.P. 1403(A)(2)(a) and (c), and he placed in the record his review of the appellant's character and the circumstances of the crime to justify the sentence. *Commonwealth v. Martin,* supra. However, my view is that the sentencing of convicted persons requires an open, unprejudiced, not predetermined view by the trial judge of each individual defendant.

Certainly, we cannot delve into the thoughts of each trial judge. However, I would admonish all trial judges to refrain from engaging in public declarations proclaiming their blanket views of how persons who share only a conviction for the same crime, and no more, should be sentenced in a particular manner. Should a judge not consider the individual characteristics and circumstances of an individual defendant then that judge violates the law. No judge should attempt to circumvent the law by mechanically stating the factors set forth in *Commonwealth v. Martin,* supra., while ignoring or creating the appearance of ignoring their importance.

I concur in the decision of the majority only because I believe the appellant received individualized sentencing and because the sentence he received is well within the sentencing guidelines provided at 75 Pa.C.S. § 3731.