**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERNEST DEMETRIUS COHENS | : | |
| | : | |
| Appellant | : | No. 921 EDA 2022 |

Appeal from the Judgments of Sentence Entered March 8, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0001224-2011,
CP-46-CR-0001907-2011

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 14, 2023**

Appellant, Ernest Demetrius Cohens, appeals from the March 8, 2022 judgments of sentence entered in the Court of Common Pleas of Montgomery County that imposed an aggregate 2½ to 5 years' sentence of incarceration following the revocation of his probation and parole for technical violations.[1]

We affirm.

---

[1] In his notice of appeal, Appellant listed both trial court docket numbers on a single notice of appeal.  A copy of the notice of appeal was filed at each trial court docket.  Our Supreme Court in ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018) held that, "the proper practice under [Pa.R.A.P.] 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket." ***Walker***, 185 A.3d at 977; ***see also*** Pa.R.A.P. 341(a) and official comments.  This Court, however, has held that the requirements of ***Walker*** and Rule 341 may be overlooked where there is a breakdown in the judicial system and a defendant is misinformed or misled regarding his or her appellate rights.  ***Commonwealth v. Larkin***, 235 A.3d 350, 354 (Pa. Super. 2020) (*en banc*), *appeal denied*, 251 A.3d 773 (Pa. 2021).

The trial court summarized the procedural history as follows:

On March 8, 2012, at the age of 43, Appellant entered into a negotiated guilty plea before the Honorable Richard J. Hodgson under [trial court] docket number [CP-46-CR-0001224-2011 ("Case 1224-2011").[2]] The three [] criminal offenses [filed at Case 1224-2011] were homicide by vehicle, accidents involving death or personal injury [while not properly licensed,] and flight to avoid apprehension[, trial, or punishment,[3]] all felonies of the third degree. Judge Hodgson sentenced Appellant to an aggregate term of [2½ to 5] years' incarceration [followed by 5] years of probation. Under the section for special condition(s) of sentences(s), Judge Hodgson checked the box stating[,] "[Appellant] shall comply with any special conditions of probation/parole/state intermediate punishment imposed by the Montgomery County Adult Probation/Parole Dep[artment], or the [Pennsylvania] Board of Probation and Parole." [Three days prior, on March 5, 2012,] Appellant [] pled guilty to [display of obscene

_____

In the case *sub judice*, the trial court, at the conclusion of Appellant's sentencing hearing, stated, "you have the right to file **an appeal** within 30 days of today's date, which is the **judgment of sentence**." N.T., 3/8/22, at 28 (emphasis added). This comment by the trial court suggested, wrongly, that Appellant could initiate appeals from his judgments of sentence by filing a single notice of appeal. This comment also indicated that such appeals would arise from a single judgment of sentence, when, in fact, separate judgments of sentence were entered in each trial court docket, as discussed *infra*. Under these circumstances, we find the use of singular nouns when referring to Appellant's right to file notices of appeal from multiple judgments of sentence was misleading and constituted a breakdown in court operations. Therefore, although we do not condone the filing of a single notice of appeal listing both trial court docket numbers, we decline to quash Appellant's appeal on the ground the notices of appeal do not comply with the mandates of **Walker** and its progeny, as well as Rule 341.

[2] Given the history of Appellant's cases, which spanned multiple years and involved multiple trial court judges, we refer to the honorable trial court judges by name for purpose of clarity.

[3] 75 Pa.C.S.A. §§ 3732(a) and 3742.1(a), as well as 18 Pa.C.S.A. § 5126(a), respectively.

- 2 -

and other sexual materials and performances,[4] a misdemeanor of the first degree, before Judge Hodgson [at trial court] docket number [CP-46-CR-0001907-2011 ("Case 1907-2011").] In that case, Judge Hodgson sentenced Appellant to [5] years['] probation.[5]

The Pennsylvania Board of Probation and Parole [("the Pennsylvania Board")] issued an order, signed on June 11, 2013, directing the release of Appellant on parole on or after August 3, 2013[. Appellant was directed] to report in[-]person to [the] Connecticut Parole in Bridgeport, Connecticut, and [received] an approved residence in Bridgeport, Connecticut. Any general and specific conditions of Appellant's parole were set forth by the [Pennsylvania] Board or by the state parole agent and not by Judge Hodgson. Appellant acknowledged receipt of the Pennsylvania Board of Probation and Parole Acceptance for State Supervision and the Conditions Governing Special Probation/Parole [form] on August 9, 2013.

Appellant signed an application for an interstate compact transfer on August 9, 2013, on which he agreed to comply with the terms and conditions of his supervision that had been placed on him, or that could be placed on him, by Pennsylvania (sending state) and Connecticut (receiving state). The Pennsylvania Board notified the [trial] court of Appellant's release to Connecticut by letter dated October 25, 2013.

On March 25, 2016, court administration rotated the disposition of Appellant's first probation/parole[ ]violation to the Honorable Todd D. Eisenberg. The bench warrant filed on March 29, 2016[,] attached a list of the violations Appellant [] allegedly committed. The notice of charges stated, *inter alia*, Appellant failed to report

---

[4] 18 Pa.C.S.A. § 5903(a)(1).

[5] As of March 8, 2012, Appellant was sentenced to 5 years' probation in Case 1907-2011 and 2½ to 5 years' incarceration followed by 5 years' probation in Case 1224-2011. Because of the order in which the sentences were imposed, Case 1907-2011 followed by Case 1224-2011, Appellant was serving his 5 years' probation (Case 1907-2011) while incarcerated (Case 1224-2011). Therefore, each time Appellant was the subject of a violation, as discussed *infra*, he violated both his probation (Case 1907-2011) and his parole (Case 1224-2011).

to Connecticut adult probation staff as instructed; refused to surrender his bounty hunter badge as instructed[;] and refused the installation of a [global positioning system ("GPS")] monitor on two occasions.

Judge Eisenberg presided over the stipulated *Gagnon I* and *II* hearing[6] and sentenced Appellant on April 8, 2016. [A Pennsylvania] parole agent informed the [trial] court that the state of Connecticut closed interest in the case and declined to supervise Appellant following his violation. Judge Eisenberg granted Appellant's motion for parole on May 16, 2016.

Less than a year later, Appellant was charged with his second violation by notice dated March 9, 2017. A Montgomery County adult probation officer provided [a] notice to Appellant at the Montgomery County Correctional Facility ("MCCF")[, which set forth Appellant's alleged violations, including Appellant's failure to obtain or maintain a legal and verifiable residence and operation of a motor vehicle without a valid driver's license.]

On May 5, 2017, Appellant appeared before Judge Eisenberg stipulating to, among other things, the failure to keep a verified address and driving without a valid driver's license. [Prior to sentencing, counsel for the Commonwealth] argued [that] Appellant's criminal history [spanned] across multiple states and [] that Appellant was on supervision for homicide by vehicle with a suspended license, yet he continue[d] to drive without a valid driver's license. Judge Eisenberg warned Appellant not to appear before him on violations again or Appellant would be serving his back time in a state correctional facility. [On June 15, 2017,] Judge Eisenberg paroled Appellant to be supervised by the Pennsylvania State Parole/Probation Department. Judge Eisenberg directed that Appellant's application under the

---

[6] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *see also Commonwealth v. Ferguson*, 761 A.2d 613 (Pa. Super. 2000) (explaining that, when a parolee or probationer is detained pending a revocation hearing, due process requires a determination at the pre-revocation hearing (*Gagnon I* hearing) of probable cause to believe a violation was committed, and upon finding of probable cause, a second, more comprehensive hearing (*Gagnon II* hearing) follows before the trial court makes its final revocation decision).

Interstate [Corrections] Compact Act[7] remain open and, if approved, Appellant could relocate to New York State. Finally, the [trial] court directed that Appellant shall abide by all court ordered conditions of the sentence dated May 5, 2017. [The State of] New York declined to accept Appellant's application under the [Interstate Corrections Compact] Act.

Approximately one year later[,] the Montgomery County Adult Probation and Parole Department charged Appellant with [] the following [violations]: 1) [failure] to obtain and/or maintain a legal and verifiable residence as directed; 2) [failure] to obtain approval and a travel permit prior to departure to travel outside the adjoining counties, out of state, and/or overnight (*e.g.*[,] New York, New Jersey, Connecticut[,] and Massachusetts); 3) [operation of] a motor vehicle without a valid driver's license, and 4) [failure] to pay fines, costs, and/or restitution.

At the stipulated *Gagnon* [*I* and *II*] hearing before Judge Eisenberg on Appellant's third violation, the following relevant exchange[] transpired:

| [Trial Court:] | But you were aware of the violations. |
|---|---|
| [Appellant:] | Yes, I have my copy with it. |
| [Trial Court:] | Okay. So you received it. And you admit to those violations; correct? |
| [. . .] | |
| [Appellant:] | Yes. |

[N.T., 9/4/18, at 5.]

| [Trial Court:] | [Appellant], you keep creating problems for yourself. |
|---|---|
| [Appellant:] | Okay, sir. I understand. |
| [Trial Court:] | All right, [Appellant]. I'm hoping I don't see you again. I really do. |
| [Appellant:] | You won't. |

---

[7] 61 Pa.C.S.A. §§ 7101 – 7103.

[*Id.* at 18-19.]

| | |
|---|---|
| [Trial Court:] | You're going to do another two weeks in jail. After that, you've got to walk off five years. If you don't walk off five years and you come back here, you're going to do a lot more than two-and-a-half months. Do you understand? |
| [Appellant:] | Yes, sir. |

[*Id.* at 20.]

Having just been released on parole from the [MCCF] on September 2, 2018[,[8]] a probation officer served [] Appellant with his fourth notice of violation at [the] MCCF on May 7, 2019. The stipulated violations included new criminal charges in New York and North Carolina[,] as well as traveling out of state without a travel permit.

[At a June 6, 2019 *Gagnon I and II* hearing, Judge Eisenburg[, at Case 1907-2011,] found Appellant violated his probation and ordered Appellant to serve 5 years' probation. At Case 1224-2011, Judge Eisenberg found Appellant violated his parole and ordered Appellant to serve 15 months' incarceration as back-time, with the possibility of parole after 10 months' incarceration, followed by 3 years' probation.] Judge Eisenberg noted under Special Conditions(s) of Sentence(s) on the disposition sheet [in Case 1224-2011] that "[Appellant] states if he violates for a 5th time[,] he will serve 8 years [and] 5 months." Judge Eisenberg granted Appellant's motion for parole on December 13, 2019, with a release date of December 28, 2019.

On July 7, 2020, Appellant signed another interstate compact [transfer] application[, requesting a transfer of supervision from Pennsylvania (sending state) to California (receiving state).] The State of California accepted supervision of Appellant through the Interstate [Corrections] Compact Act. Appellant met with his parole agent, Steven Davis, [("Agent Davis")] on [] August 12, 2020. Agent Davis reviewed Appellant's general conditions and

---

[8] The order granting Appellant's release was dated September 5, 2018, but the release was effective as of September 2, 2018.

special conditions of parole that were specific to the California Department of Corrections and Rehabilitation with Appellant, and Appellant stated that he did not have any questions regarding what was expected of him.

Appellant subsequently filed a petition for early termination of parole on September 25, 2020, which the Honorable William R. Carpenter denied on October 7, 2020.

On January 29, 2021, the Honorable Thomas M. DelRicci issued a bench warrant for Appellant on another notice of violation. The bench warrant was eventually lodged in Connecticut where law enforcement had arrested Appellant on other charges. Appellant signed the notice of violation on July 26, 2021, at [the] MCCF[, which set forth seven alleged violations].

The [trial court in the instant matter on appeal] presided over Appellant's contested *Gagnon* [*I* and *II*] hearing on February 28, 2022. The Commonwealth presented the testimony of Emily Purington, an assistant supervisor in the Montgomery County Office of Probation and Parole, as well as [] Agent [] Davis by remote [access]. Ms. Purington testified regarding the office's standard business practice for persons sentenced in Montgomery County and transferred to another county or state through the Interstate [Corrections] Compact Act federal tracking system.

Agent Davis testified that Appellant was not responsive to supervision in California. [Agent Davis] explained that Appellant originally told [Agent Davis] that [he] was a tractor-trailer driver working four [] weeks at a time and then home for ten [] days. Agent Davis stated that would have been plenty of time for him to work with Appellant. However, Appellant was oftentimes gone for longer than he was allowed on his travel passes. [Agent Davis testified that w]hen [he] told Appellant[,] "that's not how parole works, Appellant said that that's not going to work for him. It seemed to be at his discretion." Agent Davis testified regarding each of the violations, including Appellant's failure to report on January 22, 2021, [when Agent Davis visited] Appellant's address of record only to find Appellant not present and his wife telling [Agent Davis that Appellant] was not there. At that point, according to Agent Davis, Appellant [] absconded pursuant to the Interstate [Corrections] Compact Act.

Earlier, when Agent Davis [] learned that Pennsylvania believed Appellant's [driver's] license had been suspended, [Agent Davis] asked Appellant to produce a valid driver's license[,] and Appellant

did not produce one. Agent Davis also testified concerning another breach of a travel permit when Appellant spent four [] days in Pennsylvania without permission. Finally, Agent Davis explained that he did not issue Appellant a travel permit to Connecticut, where law enforcement eventually arrested [Appellant] and then extradited Appellant to Pennsylvania.

The [trial] court denied Appellant's petition to lift [his] detainer and terminate [his] probation [] on March 2, 2022.

The [trial] court reconvened on March 8, 2022, to allow Appellant the opportunity to present evidence on his own behalf. Both [the Commonwealth and counsel for Appellant] rested their cases and proceeded to argument. Appellant conceded [that] he had spent extra days outside of California for which he did not have authorization. [In its argument, the Commonwealth] detailed the testimony from February 28, 2022, supporting each of the violations, with the exception of [the violation] conceded by Appellant, and [an alleged violation for failure to pay fines, costs, and restitution, which was] withdrawn.

Trial Court Opinion, 8/1/22, at 2-14 (record citations, original footnotes, and extraneous capitalization omitted).

At the close of the two-day *Gagnon I* and *II* hearing, the trial court found that while Appellant was on interstate compact transfer supervision by the State of California, Appellant committed six violations of the California Rules and Conditions governing his supervision. Trial Court Order, 3/8/22. On March 8, 2022, at Case 1224-2011, the trial court found that Appellant violated his probation and parole and revoked his probation, sentencing Appellant to 2½ to 5 years' incarceration. That same day, at Case 1907-2011, the trial court found that Appellant violated his probation and revoked the same, sentencing Appellant to 2½ to 5 years' incarceration. The sentences

were set to run concurrently to each other. As such, Appellant's aggregate sentence was 2½ to 5 years' incarceration.

On March 18, 2022, Appellant filed a motion for reconsideration of his judgments of sentence. On April 6, 2022, Appellant filed a notice of appeal.[9] On April 7, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant filed his Rule 1925(b) statement on April 27, 2022. The trial court filed its Rule 1925(a) opinion on August 1, 2022.

Appellant raises the following issues for our review:

---

[9] Pennsylvania Rule of Criminal Procedure 708(E) required Appellant to file his notice of appeal within 30 days of the entry of his judgments of sentence, despite having filed a motion for reconsideration, because the trial court did not expressly grant the motion for reconsideration or vacate the sentences within the 30-day period following the imposition of the March 8, 2022 judgments of sentence. **See** Pa.R.Crim.P. 708(E) (stating, "A motion to modify a sentence imposed after a revocation shall be filed within 10 days of the date of imposition. The filing of a motion to modify sentence will not toll the 30-day appeal period."); **see also** Pa.R.Crim.P. 708(E) *Comments* (stating, "Under this rule, the mere filing of a motion to modify sentence does not affect the running of the 30-day period for filing a timely notice of appeal. Any appeal must be filed within the 30-day appeal period unless the sentencing [court] within 30 days of the imposition of sentence expressly grants reconsideration or vacates the sentence.").

On July 13, 2022, the trial court denied Appellant's motion for reconsideration. Because the trial court did not expressly grant the motion for reconsideration or vacate the sentences within the 30-day period following the imposition of the March 8, 2022 judgments of sentence and Appellant filed a timely notice of appeal, the trial court was divested of jurisdiction to rule on the motion for reconsideration. **Commonwealth v. Swope**, 123 A.3d 333, 337 n.16 (Pa. Super. 2015). Therefore, the July 13, 2022 order, denying Appellant's motion for reconsideration, is a legal nullity.

1.  Did not the trial court abuse its discretion when it imposed a sentence of confinement without ordering a pre-sentence investigation [("PSI")] report [] or otherwise adequately investigating and considering [Appellant's] personal background and rehabilitative needs?

2.  Did not the trial court abuse its discretion when it imposed a manifestly excessive sentence of [2½ to 5] years of confinement for technical violations of probation?

Appellant's Brief at 2.

Appellant's issues challenge the discretionary aspects of his sentences, arguing that the trial court abused its discretion for failing to order a PSI report or to consider his background and rehabilitative needs before imposing sentence and that the sentences imposed were manifestly excessive. *Id.* at 17-33.

> It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):
>
> > An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
> >
> > We conduct a four-part analysis to determine: (1) whether appellant [] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

[**Moury**, 992 A.2d] at 170. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. **Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa. Super. 2001).

**Commonwealth v. Hill**, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted). If an appellant fails to raise a challenge to the discretionary aspects of a sentence either by presenting a claim to the trial court at the time of sentencing or in a post-sentence motion, then the appellant's challenge is considered waived. **Commonwealth v. Lamonda**, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted), *appeal denied*, 75 A.3d 1281 (Pa. 2013). A substantial question exists when the appellant presents a colorable argument that the sentence imposed is either (1) inconsistent with a specific provision of the Sentencing Code or (2) is "contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011). "While a bald claim of excessiveness does not present a substantial question for review, a claim that the sentence is manifestly excessive, inflicting too severe a punishment, does present a substantial question." **Commonwealth v. Hicks**, 151 A.3d 216, 227 (Pa. Super. 2016), *citing* **Commonwealth v. Haynes**, 125 A.3d 800, 807-808 (Pa. Super. 2015), *appeal denied*, 167 A.3d 1287 (Pa. 2017). Similarly, "[a]n appellant's allegation that the trial court imposed sentence without considering the requisite statutory factors or stating adequate reasons for dispensing with a [PSI] report raises a substantial question." **Commonwealth v. Finnecy**, 135

- 11 -

A.3d 1028, 1032 (Pa. Super. 2016) (citation and original brackets omitted), *appeal denied*, 159 A.3d 935 (Pa. 2016).

Here, the record reflects that Appellant filed a timely notice of appeal and properly preserved a challenge to the discretionary aspects of his sentence in his motion for reconsideration of sentence, albeit the trial court was divested of the authority to address the motion for reconsideration for the reasons discussed *supra*. Appellant also included a Rule 2119(f) statement in his brief. Appellant's Brief at 14-17. In his Rule 2119(f) statement, Appellant argues that "the [trial] court imposed a sentence without either ordering a PSI [report] or offering a reason on the record for its decision not to order a PSI [report,] and [] the [trial] court failed to otherwise investigate and consider [Appellant's] background and rehabilitative needs." *Id.* at 15-16. Appellant also argues that the trial court imposed "an excessive sentence" that was "disproportionately severe" as punishment for "purely technical violations" without considering Appellant's circumstances and background. *Id.* at 16-17. In so arguing, we find that Appellant raises substantial questions regarding the trial court's alleged failure to order, and consider, a PSI report, as well as Appellant's background and rehabilitative needs, before imposing an excessive and disproportionate sentence. *Hicks*, 151 A.3d at 227; *see also Finnecy*, 135 A.3d at 1032. Therefore, we proceed to consider the merits of Appellant's discretionary sentencing claims.

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal.

An abuse of discretion is more than an error in judgment - a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will.

*Commonwealth v. Starr*, 234 A.3d 755, 760-761 (Pa. Super. 2020) (citation omitted), *appeal denied*, 243 A.3d 724 (Pa. 2020).

Regarding the trial court's need for a PSI report to aid in fashioning an individualized sentence, Pennsylvania Rule of Criminal Procedure 702(A) states, in pertinent part, as follows:

### Rule 702.  Aids in Imposing Sentence

**(A) Pre-sentence Investigation Report**

(1) The sentencing judge may, in the judge's discretion, order a pre-sentence investigation report in any case.

(2) The sentencing judge shall place on the record the reasons for dispensing with the pre-sentence investigation report if the judge fails to order a pre-sentence report in any of the following instances:

    (a) when incarceration for one year or more is a possible disposition under the applicable sentencing statutes;

    (b) when the defendant is less than 21 years old at the time of conviction or entry of a plea of guilty; or

    (c) when a defendant is a first offender in that he or she has not heretofore been sentenced as an adult.

(3) The pre-sentence investigation report shall include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence.

Pa.R.Crim.P. 702(A)(1-3).  Thus, while a trial court has discretion to forgo ordering, and reviewing, a PSI report, if the trial court forgoes the same, and,

- 13 -

*inter alia*, there is a possibility that the sentence will result in one or more years of incarceration, the trial court must place on the record the reasons for dispensing with a PSI report. *Id.*; *see also Commonwealth v. Flowers*, 950 A.2d 330, 332-333 (Pa. Super. 2008) (stating that, although Rule 702(A) "vests discretion in the trial [court] to dispense with a PSI [report], it also mandates that under certain circumstances the [trial] court must document its reasons for doing so").

Although a trial court, which dispensed with ordering and reviewing a PSI report prior to sentencing, is required to place on the record its reasons for forgoing use of a PSI report, the trial court is "provided some latitude in how this requirement is fulfilled." *Finnecy*, 135 A.3d at 1032. "The essential inquiry is [] whether the sentencing court was apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." *Id.* (original quotation marks omitted), *citing* ***Commonwealth v. Goggins***, 748 A.2d 721 (Pa. Super. 2000) (*en banc*); *see also Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 726 (Pa. Super. 2013) (stating that, "technical non[-]compliance with the requirements of Rule 702(A)(2) [may be found to be] harmless [if] the [trial] court elicited sufficient information during the colloquy to substitute for a PSI report, thereby allowing a fully informed sentencing decision"); *Flowers*, 950 A.2d at 333 (stating, "[a] sentencing [court] must either order a PSI report or conduct sufficient pre[-]sentence inquiry such that, at a minimum, the [trial]

court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background").

Here, a review of the record demonstrates that the trial court, upon finding that Appellant violated the terms of his parole and probation in the two aforementioned cases, did not order, or review, a PSI report before sentencing Appellant to an aggregate term of 2½ to 5 years' incarceration. Prior to sentencing Appellant, however, the following dialogue occurred:

| [Appellant:] | I just ask for leniency. That's all, Your Honor. |
|---|---|
| [Trial Court:] | All right. How old are you now? Fifty-Four? |
| [Appellant:] | I'll be 54 next month. And, yes, there is one last thing I'd like to say. |
| [Trial Court:] | Go right ahead. |
| [Appellant:] | I'm also seven months behind in having my cardio - my second cardiovascular surgery. I was supposed to have had it in August. I had the first one in May. |
| [Trial Court:] | What are you having done, what type of procedure? |
| [Appellant:] | Well, they have to - as of right now, there's no telling exactly the percentage rate of my arteries. The second one, they have to go in - they have to go in from the groin and come up to clear out the arteries. And they [have] to put in a temporary pacemaker. |
| [Trial Court:] | Okay. All right. Thank you. So the [trial] court finds [Appellant] in violation of his supervision. He is a 53-year-old male appearing before the [trial] court for his fourth violation of probation and parole. He was last before the [trial] court on June 6, 2019, when he stipulated to being in violation of his supervision. He is now before the [trial] court with technical violations of the |

Interstate [Corrections] Compact [Act]. Those issues were largely addressed at the prior hearing on February 28, 2022.

After [Appellant] was sentenced [in June 2019], he was released on - after [Appellant] was sentenced on the most recent [violation], he was released on December 28, 2019, and reported to [the] Montgomery County Adult Probation and Parole Department stating that he wished to move to California with his wife. On July 27, 2020, the State of California accepted [Appellant's] case through the Interstate [Corrections] Compact [Act] agreement for supervision.

On September 25, 2020, [Appellant] entered a petition for early termination of parole. On October 7, 2020, the Honorable William R. Carpenter denied that request.

On [] January 27, 2021, [a] notice of violation requiring re-taking was received regarding [Appellant] from the State of California.

A summary of the supervision history from California is as follows.

On August 11, 2020, [Appellant] arrived [in] California from Pennsylvania on an interstate transfer. [Appellant] informed [Agent Davis] that he was a truck driver [] but understood that he needed to be responsible for parole supervision.

[Appellant] was granted travel passes [to] leave the State of California. However, [Appellant] abused the travel passes by not returning to California when instructed to do so. [Agent Davis] also became aware that [Appellant] does not have a valid [driver's] license. And when asked to show a valid license, [Appellant] initially refused to do so. [Appellant] eventually sent [Agent Davis] a picture of a New York Class A [driver's] license. [Agent Davis] ran the license through Sacramento Police dispatch and

the New York City Police dispatch, and both [inquiries showed] that the [driver's] license was revoked and/or suspended.

On January 7, 2021, [Appellant] reported to the parole office as instructed to secure an electronic in-home detention [("EID")] monitor.

[Appellant] tried to explain his need to drive beyond the 50 miles out of state for his job. [Agent Davis] explained that he called New York and [learned] that [Appellant's] driver's license is revoked. [Agent Davis] stated to [Appellant that] he could not drive any vehicle without a valid license.

After the [EID] monitor [] was attached to [Appellant's] ankle, [Appellant] refused to sign the conditions for wearing the device and refused to listen to instructions on how the device works. [Appellant] grabbed [his] bag and left the office. Several other parole agents observed [Appellant] get into [the driver's seat of] his vehicle[] and drive away.

Approximately, ten minutes later, [Appellant] returned and asked for a grievance form. [Appellant] argued [] that there was a glitch in the system and his [driver's] license was valid. [Agent Davis] reminded [Appellant] that he was just instructed not to drive unless he could establish that he has a valid [driver's] license. [Appellant] left the office again.

Approximately, five to ten minutes later, parole agents observed [Appellant] driving his [vehicle] westbound and honking the horn as he did so.

On January 8, 2021, [Appellant] came to the parole office to turn in a complaint and to request a travel permit to New York for doctor and dental appointments.

[Agent Davis] began to explain the process [for] requesting two different travel passes.

[Appellant] began to look faint. Paramedics were called. [Appellant] had to go to the emergency room due to [hypertension]. Due to the medical emergency, the EID [monitor] was removed. Prior to [Appellant] leaving, [Appellant] yelled at [Agent Davis,] blaming him for the medical condition.

On January 20, 2021, [Agent Davis] attempted a home visit at [Appellant's] residence of record. [Appellant's] wife[] stated that [Appellant] was not home but was working. [Agent Davis] texted [Appellant,] instructing him to report to the parole office on January 22, 2021, to be placed on [EID] monitor[] supervision.

[Appellant] failed to report to the parole office on January 22[,] 2011[,] at 12:00 p.m.

[Appellant] texted the following, ["]Are you putting an ankle monitor on me or detaining me? Be it that's the case, I can report back to [Pennsylvania] on my own and report to [a probation officer,] let [that probation officer] detain me[,] and go before my judge and take it from there, be I have enough to show your mistreatment and abusiveness. You're doing what Pennsylvania never did[."]

On January 25, 2021, [Appellant] failed to report to the parole office as instructed. [Agent Davis] and additional parole agents attempted to make contact with [Appellant] at his residence of record. However, [Appellant] was not found.

[Agent Davis] reviewed the [California Department of Corrections and Rehabilitation] parolee sign-in sheet which showed [Appellant] failed to report to the parole office on the dates of January 8, 2021, and January 25, 2021. The State of California declared [Appellant] an absconder.

Being provided with this information, a Montgomery County Adult Probation and Parole Department bench warrant was issued on January 27, 2021.

On [] June 20, 2021, Detective Kelly from the Berlin Police Department in Connecticut called the [Montgomery County Adult Probation and Parole Department] stating he received an anonymous call that [Appellant] was in [Connecticut] working in his jurisdiction. Detective Kelly requested a color image of [Appellant] to verify his identity.

[O]n June 7, 2021, [Appellant] incurred new charges in Connecticut. [Appellant] was charged with forgery and criminal impersonation. In summary, once approached by the police officers, [Appellant] failed to identify himself [by his given name]. He provided a driver's license of another male[. Appellant] also possessed a New York Bail Enforcement Officer Badge Number 1114. These charges were subsequently *nolle prosed*. []Detective Kelly confirmed the Montgomery County Adult Probation and Parole Department bench warrant[, and Appellant] was extradited to Pennsylvania.

[Appellant] is a 53-year-old male. [O]n June 6, 20[19], he appeared before what I would best describe, having read the entire record on this [matter], an exasperated Judge Eisenberg. Exasperated, frustrated, and annoyed was the tone because Judge Eisenberg on the record told [Appellant] that he had given him breaks several times, and [Appellant] having agreed to that. And when reading the notes of testimony - I refer for the record to page 24 of the notes of testimony of June 6, 2019 – [Appellant] says as follows: "Judge Eisenberg, like I said, yes, I've been before you multiple times. This will be the last time."

[Judge Eisenberg] responded as follows: "That's what you told me the last time, [Appellant]." [Appellant said,] "Yes, this will be the last time." [Judge Eisenberg responded,] "And I gave you a break last time." [To which, Appellant stated,] "Yes, you did. And I'm asking for you to give me one last one, one final one. And with this being said, if you see me in front of you again, you can send me up state. I'm saying it now. If you cut me this one last break to let me resolve this issue with New York and North Carolina and put me back under [Montgomery County adult probation and parole] supervision, you will never see me again."

[Appellant] responded on page 28 [of the same notes of testimony,] "Like I said, Your Honor, if you ever see me again, you can give me all of that," which by that point, it was mentioned, as the Commonwealth mentioned this morning, that that would be eight years of back time.

Judge Eisenberg again gave [Appellant] a rather lenient sentence by his own accounts but did something that is highly unusual. On the sentencing sheet on the matter docketed at [Case 1224-2011], Judge Eisenberg wrote the following under Special Condition of Sentence: "[Appellant] states if he violates for a fifth time, he will serve eight years and five months."

What that was done for, obviously, is to alert the [trial c]ourt that if [Appellant] appeared again for a violation, to alert the [trial c]ourt to that situation.

[Appellant] continues to show his non-compliance with the conditions imposed by the [trial] court as this will be his [fifth] violation proceeding since being on supervision [starting in] 2011. The supervision history is with the Pennsylvania Board of Probation and Parole. [Appellant] has shown that [Montgomery] County supervision has not deterred him from

- 20 -

continuing to engage in antisocial behavior. That is crucial in my decision in this case.

He has also shown clear non-compliance with rules imposed by other states who are willing to supervise [Appellant] wherever he resides. His previous violation involved another out-of-state arrest. Now, in two instances, [Appellant] incurred new arrests in states in which he [] had no permission to travel to, Connecticut and [North] Carolina.

And, again, at [Appellant's] hearing before Judge Eisenberg on June 6, [2019, Appellant] stated[,] "If Your Honor ever sees me again for another violation, [Appellant] would take whatever - he would be able to take whatever state sentence that the [trial court] felt appropriate to impose."

Despite a stern warning on the record from Judge Eisenberg and being given the opportunity, again, [Appellant] returns today for another violation or proceeding for conduct which clearly violates the Interstate [Corrections] Compact [Act].

Due to all these circumstances, the [trial c]ourt contends that a period of incarceration at a state correctional institution is both warranted and necessary to impress upon [Appellant] the importance of complying with conditions of supervision and to [ensure] that he will be supervised by the Pennsylvania Board of Probation and Parole.

Regrettably, in speaking about rehabilitation, in reviewing this case in preparation for today, I've come to the conclusion that [Appellant] has been [] devious, deceptive, untruthful, self-entitled, with a complete disregard for others and[,] in particular[,] authority. With a sense of arrogance, [Appellant] refuses to obey and comply with the rules and regulations and has an inability to accept the most important part of this, and that is that parole is a privilege

and not a right. In terms of rehabilitation, until he understands that [parole is a privilege and not a right], he will not be successful in any type of rehabilitation.

I think it's appropriate that [Appellant] be evaluated by a psychologist as soon as possible so that those professionals will be able to evaluate him and determine what course of treatment and what course of direction should be taken in an effort to gain rehabilitation.

Based upon all those facts, the [trial c]ourt will now render the appropriate sentence.

N.T., 3/8/22, at 15-26 (extraneous capitalization omitted).

In **Flowers**, **supra**, the trial court sentenced Flowers to a term of incarceration after revoking his probation. **Flowers**, 950 A.2d at 331. Prior to sentencing Flowers, the trial court "did not order a [PSI report] and offered no statement on the record to explain its decision not to do so." **Id.** "Moreover, the [trial] court did not question Flowers concerning matters that a PSI report would have documented and made no reference to any documentation that may have been compiled prior to the original sentencing." **Id.** On review, the **Flowers** Court stated that "technical noncompliance with the requirements of Rule 702(A)(2) might be rendered harmless [when] the [trial] court elicit[s] sufficient information during the colloquy to substitute for a PSI report, [10] thereby allowing a fully informed sentencing decision." **Id.** at

_____

[10] The "essential and adequate elements" of a PSI report include all the following:

333. The *Flowers* Court further stated that "at a minimum, the [trial] court

[must be] apprised of the particular circumstances of the offense, not limited

_____

(A) a complete description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt;

(B) a full description of any prior criminal record of the offender;

(C) a description of the educational background of the offender;

(D) a description of the employment background of the offender, including any military record and including his[, or her,] present employment status and capabilities;

(E) the social history of the offender, including family relationships, marital status, interests and activities, residence history, and religious affiliations;

(F) the offender's medical history and, if desirable, a psychological or psychiatric report;

(G) information about environments to which the offender might return or to which he[, or she,] could be sent should probation be granted;

(H) supplementary reports from clinics, institutions[,] and other social agencies with which the offender has been involved;

(I) information about special resources which might be available to assist the offender, such as treatment centers, residential facilities, vocational training services, special educational facilities, rehabilitative programs of various institutions to which the offender might be committed, special programs in the probation department, and other similar programs which are particularly relevant to the offender's situation;

(J) a summary of the most significant aspects of the report, including specific recommendations as to the sentence if the sentencing court has so requested.

*Goggins*, 748 A.2d at 728-729, *quoting* *Commonwealth v. Martin*, 351 A.2d 650 (Pa. 1976).

to those of record, as well as the defendant's personal history and background" before sentencing an individual without a PSI report. *Id.* Ultimately, the *Flowers* Court found that the limited colloquy in that case "merely restat[ed] the seriousness of the underlying offense and confirm[ed] Flower's violation of his probation." *Id.* at 334. In vacating Flower's judgment of sentence, the *Flowers* Court held that such a limited record "offers no effective substitute for a PSI report." *Id.*

In the case *sub judice*, Appellant was sentenced without a PSI report, and at the time of sentencing, the trial court did not explicitly state any reasons for dispensing with a PSI report. However, in its Rule 1925(a) opinion, the trial court explained its reasons for dispensing with the PSI report as follows:

> [The trial] court had the opportunity to review voluminous records spanning [10] years[,] as well as transcripts regarding Appellant's previous violations to which he stipulated to and requested leniency, repeatedly stating[,] "this is the last time[.]" The trial court also reviewed] the detailed report and recommendation of the Montgomery County Adult Probation and Parole Department from July [] 2021, [had] the opportunity to hear and observe Montgomery County assistant supervisor Emily Purington and [Agent Davis] in addition to Appellant and, finally, the argument of counsel.
>
> Before sentencing Appellant, the [trial] court specifically found him in violation of the conditions of supervision set by the [S]tate of California, reviewed with [Appellant by Agent Davis,] and agreed to by Appellant, as well as the Interstate [Corrections] Compact Act. The [trial] court summarized Appellant's history of supervision; his outright refusal at times to comply with a majority of the conditions of his supervision; the number of times he had been before Judge Eisenberg stipulating to the same violations and stating that this would be the last time; the charges filed

against him in other states, states that he had not received a travel permit to be in at the time; his rehabilitative needs; his health status; the need for an evaluation by a psychologist as soon as possible; and the undeniable conclusion that probation and parole supervision to date had not deterred him from continuing to engage in antisocial behavior. Despite being given stern warnings and several opportunities to demonstrate that he could comply with the conditions of supervision, Appellant [] returned to the Montgomery County Court [of Common Pleas] on the same or similar violations for the fifth time.

Having read all of the transcripts and recommendations from the last [10] years, [the trial] court was acutely aware of Appellant's educational background, employment background, social history (including marital history and children), current medical history, descriptions of the offenses Appellant had either been convicted of or charged with and Appellant's version of the events constituting his repeated appearances in court for violations of the conditions of his supervision. The Commonwealth argued for a sentence of [3½] to [7] years[' incarceration] on [Case] 1224-2011 and a concurrent [sentence of 2½] to [5] years[' incarceration] on [Case] 1907-[20]11 based on Appellant's assurances to Judge Eisenberg in 2019. [The trial] also took Appellant's assurances to Judge Eisenberg into account, but declined to sentence Appellant to the maximum allowable sentence.

Instead, the [trial] court concluded that a period of incarceration at a state correctional facility was both warranted and necessary to impress upon Appellant the importance of complying with conditions of supervision and to make sure that Appellant will be supervised by the Pennsylvania Board of Probation and Parole. After finding Appellant in violation, the [trial] court determined that probation was not achieving its desired purpose of rehabilitation and deterring criminal activity. Moreover, the imposition of lesser sentences had clearly not achieved the desired effect, and a longer sentence of incarceration was essential to vindicate the authority of the [trial] court.

Trial Court Opinion, 8/1/22, at 34-36.

We conclude that, in reviewing the extensive record spanning more than

a decade, the trial court was apprised of sufficient information to substitute

for a PSI report. The affidavit of probable cause attached to the criminal complaint filed against Appellant on February 10, 2011, detailed the facts giving rise to Appellant's criminal convictions. Moreover, the trial court was well-apprised of Appellant's history of violating the conditions of his probation and parole, which is supported by the record, and noted Appellant's prior promises to never commit future violations. N.T., 3/8/22, at 17-25. Appellant informed the trial court prior to sentencing in the case *sub judice* that he was 53 years old, was employed as a truck driver in California, was married and was supporting his three minor children, who resided in California, and had cardiovascular-related health issues for which he was currently being treated. *Id.* at 13-17. Moreover, the trial court, based upon a review of the record, was aware that Appellant graduated high school, completed some college classes (18 credits), had no history of mental health treatment, and, in 2019, had open cases involving assault charges filed by his son in New York and by his daughter in North Carolina. N.T., 6/6/19, at 4, 6-7; *see also* 3/8/12, at 4-5. The trial court was also aware that Appellant had recent criminal charges involving forgery and criminal impersonation filed against him in Connecticut and that Appellant was not in possession of a valid driver's license, yet continued to drive a tractor-trailer as part of his employment. N.T., 3/8/22, at 18, 21. Consequently, we find the trial court, in the case *sub judice,* was "apprised of comprehensive information to make [Appellant's] punishment fit not only the crime but also the person who committed it." *Finnecy*, 135 A.3d at 1032. As such, while we do not condone the trial court's failure to explicitly

note on the record its reasons for not ordering and reviewing a PSI report prior to sentencing, we find the information gleaned from a review of the extensive record was sufficient to substitute for a PSI report. Moreover, in imposing Appellant's sentence, the trial court adequately considered Appellant's behavior and rehabilitative needs. Specifically, the trial court concluded that Appellant was "devious, deceptive, untruthful, [and] self-entitled with a complete disregard for others and[,] in particular[,] authority." N.T., 3/8/22, at 25. The trial court further considered that Appellant's behavior of repeatedly violating his probation and parole demonstrated "a sense of arrogance" and a refusal "to obey and comply with the rules and regulations" governing his probation and parole. In considering Appellant's rehabilitative needs, the trial court intended that incarceration in a state correctional institution would "impress upon [Appellant] the importance of complying with conditions of supervision[.]" *Id.* As part of Appellant's sentence, the trial court further ordered that Appellant undergo a psychological evaluation to determine the best course of treatment in an effort for Appellant "to gain rehabilitation." *Id.* Therefore, we further find that the trial court, in fashioning Appellant's individualized sentence, adequately considered Appellant's behavior and rehabilitative needs. As such, Appellant's first issue with without merit.

Appellant's second issue challenges his aggregate sentence on the ground that the trial court imposed a manifestly excessive sentence as punishment for technical violations of his parole and probation.

Section 9771(b) of the Sentencing Code states that, "[u]pon revocation the sentencing alternatives available to the [trial] court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S.A. § 9771(b). A trial court is permitted to impose a sentence of total confinement upon revocation when the trial court finds that "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the [trial] court." 42 Pa.C.S.A. § 9771(c); *see also Commonwealth v. Pasture*, 107 A.3d 21, 27-28 (Pa. 2014).

Here, the trial court explained, "the imposition of lesser sentences had clearly not achieved the desired effect, and a longer sentence of incarceration [upon revocation *sub judice*] was essential to vindicate the authority of the [trial] court." Trial Court Opinion, 8/1/22, at 36. Moreover, a review of the revocation hearing transcript demonstrates that the trial court believed state incarceration was necessary to vindicate the trial court's authority. *See generally* N.T., 3/8/22. As the trial court found, and Appellant's behavior of repeatedly violating his probation and parole demonstrates, Appellant has a "sense of arrogance" and an inability to accept that he must follow the rules and regulations of his parole and probation, as parole and probation are privileges and not rights. By way of example, Appellant abused travel passes, which were issued by Agent Davis and permitted Appellant to leave the State

- 28 -

of California as part of his employment, when Appellant failed to return, as required, to the state and repeatedly drove vehicles without a valid driver's license, having received additional criminal charges stemming from his use of a fraudulent driver's license. Prior to the instant revocation hearing, as noted by the trial court, Appellant's probation and parole had been revoked four times in the past, with Appellant promising each time that this series of violations were the last. As such, we do not find the trial court abused its discretion in fashioning a sentence of total confinement. Therefore, Appellant's second issue is without merit.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2023